UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK PINDER,

        Plaintiff,

    v.

EMPLOYMENT DEVELOPMENT
DEPARTMENT; RICHARD
ROGERS; DAVID DERKS and
DOES 1-50, inclusive,

        Defendants.
_____/

NO. CIV. S-13-817 LKK/AC

O R D E R

    Plaintiff Frank Pinder brings this action for harassment, discrimination, and retaliation against the California Employment Development Department (EDD) and his former supervisors in that California agency.

    Pending before the court is Defendants' motion to dismiss Plaintiff's First Amended Complaint. Defs' Mot., ECF No. 9. For the reasons provided herein, the court GRANTS, in part, and DENIES, in part, Defendants' motion.

////

////

1

1                                  **I. BACKGROUND**

2    **A. Factual Background**[1]

3        In January 2010, Plaintiff Frank Pinder was hired by the

4    California Employment Development Department ("EDD") as a System

5    Software Specialist III Supervisor.   He was responsible for

6    supervising approximately 21 employees.

7        The complaint alleges that he is a soft-spoken black man who

8    suffers from mild-to-moderate stuttering, which escalates to more

9    severe stuttering during times of stress and anxiety.   He is mostly

10   able to control his stuttering, except during the times when he

11   feels harassed or under duress.

12       During most of his instant employment, Plaintiff's immediate

13   supervisors included Defendants David Derks and Richard Rogers.

14       Defendant Derks began his employment with EDD as Plaintiff's

15   supervisor in February 2010.   Defendant Derks would speak to

16   Plaintiff in a rude and abusive manner, exclude him from

17   participation in team meetings, and otherwise frustrate Plaintiff's

18   ability to perform his essential duties.

19       Defendant Derks also initiated one-on-one weekly meetings with

20   Plaintiff.   These meetings occurred more often with Plaintiff than

21   with the other supervisors working under Defendant Derks.   During

22   these meetings, Defendant Derks was verbally abusive and hostile to

23   ────────────────

24        [1] These facts are taken from the allegations in the
     Plaintiff's First Amended Complaint, ECF No. 8, unless otherwise
25   specified.   The allegations are taken as true for purposes of this
     motion only.   See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct.
26   2197, 167 L.Ed.2d 1081 (2007).

1  Plaintiff.   After   their   first   one-on-one   meeting,   Plaintiff
2  received an email from Defendant Derks, in which Defendant Derks
3  claims that Plaintiff had lost the respect and confidence of the
4  employees whom Plaintiff supervised.

5      In May 2010, Plaintiff filed a complaint with EDD's Equal
6  Employment Opportunity ("EEO") office, in which he voiced concerns
7  regarding the harassment by Defendant Derks.   Plaintiff was
8  informed that nothing could be done.

9      On May 11, 2010, Defendant Derks sent Plaintiff an email
10 informing him that the "perception of your . . . team and
11 management is that you are not technically qualified" and that
12 "this perception is affecting your ability to lead the group."
13 Defendant Derks required Plaintiff to print, sign, and acknowledge
14 the contents of this email.

15     On May 14, 2010, Plaintiff was given a sub-par Performance
16 Report.  Plaintiff objected to the report, claiming that it "does
17 not depict my professional skill or ability to do my job," and that
18 it was retaliatory due to his "continued requests to be provided
19 with the tools to do my job, to be involved in the process of day
20 to day work and to be kept informed of the decisions that directly
21 affect my staff."

22     On May 28, 2010, Defendant Derks sent an email to Plaintiff,
23 informing Plaintiff that he had been removed as the manager on a
24 certain project and that Defendant Derks, himself, would become the
25 manager on that project.

26     In May or June 2010, Plaintiff met with Defendant Derks to

report an employee's timecard fraud, but was instructed by Defendant Derks to sign off on that employee's timesheets.

In June 2010, Plaintiff filed another complaint with the EEO office. The EEO office sought intervention from the Department of Industrial Relations ("DIR"), State Mediation and Conciliation Services section. After an investigation, the DIR determined that Plaintiff was not being given the opportunity to do his job. The DIR ordered Defendants Derks and Rogers to allow Plaintiff to perform his duties, supervise his team, and participate in meetings. The DIR also instructed Defendant Derks to cease the one-on-one meetings with Plaintiff; however, Plaintiff continued to be forced to participate in these meetings. It was clear to Plaintiff that Defendant Rogers was not happy that Plaintiff had made a report to the EEO and DIR.

In July 2010, Defendant Derks called Plaintiff in for another one-on-one meeting, at which Defendant Derks verbally attacked Plaintiff by yelling and screaming at him. In early August 2010, Defendant Derks again called Plaintiff in for a one-on-one meeting, during which Defendant Derks yelled at Plaintiff to "sit down!" and verbally attacked Plaintiff by yelling and screaming at him. Plaintiff became stressed and anxious, and had difficulty sleeping.

On August 23, 2010, Plaintiff emailed Defendant Rogers, informing him that Defendant Derks was creating a hostile work environment and that, upon the advice of DIR, Plaintiff did not want to continue participating in future one-on-one meetings with Defendant Derks.

1    The next day, Defendant Rogers met with Plaintiff and informed
2 him that the one-on-one meetings with Defendant Derks would stop
3 and that Plaintiff would be placed under the direct supervision of
4 Defendant Rogers.

5    On September 10, 2010, the same day that Plaintiff began a
6 pre-approved vacation, a second Performance Report was prepared and
7 given to Plaintiff.  When Plaintiff returned from vacation, he was
8 given a verbal reprimand for failing to respond to his 6-page
9 probation report.

10    In a letter dated September 28, 2010, Plaintiff was informed
11 that he would receive an interim Performance Report.  This report
12 was given to Plaintiff on December 2, 2010.

13    In October 2010, while Plaintiff was out of the office on
14 approved sick leave, Defendant Rogers assigned him a large project.
15 When Plaintiff returned from his approved sick leave, Defendant
16 Rogers did not provide him with any additional information
17 regarding the project.  After some investigation, Plaintiff
18 discovered that the project had been attempted years before and
19 required collaboration from an entire team, and not just Plaintiff
20 himself.  Plaintiff believed that he was given the assignment in an
21 attempt to cause him to fail.

22    Between November and December 2010, Defendant Rogers
23 interviewed staff members and employees under Plaintiff's
24 supervision in an attempt to find fault in Plaintiff's work.

25    On December 8, 2010, Defendant Rogers submitted a written
26 Request for Rejection on Probation to Tina Campbell, Chief of the

1  Human Resources Services Division.  On December 12, 2010, Plaintiff
2  was given a third and final Performance Report.

3      In a letter from Defendant Rogers, dated December 17, 2010,
4  Plaintiff was informed that he had been denied a salary adjustment
5  due to the unacceptable ratings on his first, second, and interim
6  Performance Reports.

7      On January 7, 2011, Plaintiff was given a Notice of Rejection,
8  terminating his employment with EDD.  Despite his dedicated and
9  competent service, Plaintiff was informed that he was being
10  rejected "for reasons relating to [his] qualifications, for the
11  good of the service[,] and for failure to demonstrate merit,
12  efficiency, and fitness."

13      Throughout his employment with EDD, Plaintiff, on many
14  occasions, was not given his required meal and rest breaks.

15      On April 30, 2011, approximately 3.5 months after he was
16  terminated, Plaintiff filed a claim with the Equal Employment
17  Opportunity Commission ("EEOC" or "Commission").  On November 7,
18  2012, Plaintiff received a Right to Sue notice from the EEOC.  On
19  January 2, 2013, approximately 2 months after receiving his EEOC
20  Right to Sue notice, Plaintiff filed a Government Tort Claim.  On
21  February 2, 2013, Plaintiff filed a DFEH claim and received an
22  immediate Right to Sue notice.  On March 8, 2013, Plaintiff filed
23  a complaint with the State Personnel Board.  On March 19, 2013, the
24  State Personnel Board responded seeking additional information.  On
25  April 8, 2013, Plaintiff submitted an amended complaint with the
26  State Personnel Board.  On April 11, 2013, the State Personnel

1  Board responded with a refusal to issue findings.

2       Plaintiff brings nine causes of action against the Defendants,

3  arising under California's Fair Employment and Housing Act

4  ("FEHA"), Title VII of the Civil Rights Act of 1964 ("Title VII"),

5  the Americans with Disabilities Act of 1990 ("ADA"), California's

6  Whistleblower Protection Act, California Labor Codes §§ 98.6

7  (discrimination) and 1102.5 (retaliation), California's Private

8  Attorneys General Act ("PAGA"), as well as state and federal

9  employment regulations.

10 **B. Defendants' Motion to Dismiss**

11      On June 7, 2013, Defendants filed the instant motion to

12 dismiss.  Def's Mot., ECF No. 9.  Defendants argue, <u>inter alia</u>,

13 that: (1) Plaintiff failed to timely exhaust his administrative

14 remedies; (2) Plaintiff does not sufficiently plead that he was

15 subject to discrimination on the basis of race; (3) Defendants

16 Rogers and Derks were not "employers" under Title VII; (4)

17 Plaintiff fails to sufficiently allege a protected disclosure in

18 support of his discrimination and retaliation claims; (5)

19 Plaintiff's claim under the Private Attorneys General Act is barred

20 by the statute of limitations; and (6) Plaintiff's request for

21 punitive damages fails as a matter of law.

22                **II. STANDARD FOR A MOTION TO DISMISS**

23      A dismissal motion under Federal Rule of Civil

24 Procedure 12(b)(6) challenges a complaint's compliance with the

25 federal pleading requirements.  Under Federal Rule of Civil

26 Procedure 8(a)(2), a pleading must contain a "short and plain

1  statement of the claim showing that the pleader is entitled to

2  relief."  The complaint must give the defendant "'fair notice of

3  what the ... claim is and the grounds upon which it rests.'"  Bell

4  Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d

5  929 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99,

6  2 L.Ed.2d 80 (1957).

7      To meet this requirement, the complaint must be supported by

8  factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129

9  S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Moreover, this court "must

10 accept as true all of the factual allegations contained in the

11 complaint."  Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197,

12 167 L.Ed.2d 1081 (2007).[2]

13      "While legal conclusions can provide the framework of a

14 complaint," neither legal conclusions nor conclusory statements are

15 themselves sufficient, and such statements are not entitled to a

16 presumption of truth.  Iqbal, 556 U.S. at 679.  Iqbal and Twombly

17 therefore prescribe a two step process for evaluation of motions to

18 dismiss.  The court first identifies the non-conclusory factual

19 allegations, and then determines whether these allegations, taken

20 as true and construed in the light most favorable to the plaintiff,

21 "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S.

22

23      [2] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490
   U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
24 are dismissals based on a judge's disbelief of a complaint's
   factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236
25 (1974) ("it may appear on the face of the pleadings that a recovery
   is very remote and unlikely but that is not the test" under
26 Rule 12(b)(6)).

8

1   at 679.

2       "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

3   refer to the likelihood that a pleader will succeed in proving the

4   allegations.   Instead, it refers to whether the non-conclusory

5   factual allegations, when assumed to be true, "allow[ ] the court

6   to draw the reasonable inference that the defendant is liable for

7   the misconduct alleged."   <u>Iqbal</u>, 556 U.S. at 678.   "The

8   plausibility standard is not akin to a 'probability requirement,'

9   but it asks for more than a sheer possibility that a defendant has

10  acted unlawfully."   <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).[3]   A

11  complaint may fail to show a right to relief either by lacking a

12  cognizable legal theory or by lacking sufficient facts alleged

13  under a cognizable legal theory.   <u>Balistreri v. Pacifica Police</u>

14  <u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

15                          **III. ANALYSIS**

16

17      [3] <u>Twombly</u> imposed an apparently new "plausibility" gloss on
    the previously well-known Rule 8(a) standard, and retired the
    long-established "no set of facts" standard of <u>Conley v. Gibson</u>,
18  355 U.S. 41 (1957), although it did not overrule that case
    outright.   <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th
19  Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright
    overruling <u>Conley</u> ...," although it was retiring the "no set of
20  facts" language from <u>Conley</u>).   The Ninth Circuit has acknowledged
    the difficulty of applying the resulting standard, given the
21  "perplexing" mix of standards the Supreme Court has applied in
    recent cases.   <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th Cir.
22  2011), <u>cert. denied</u>, 132 S. Ct. 2101 (2012).   <u>Starr</u> compared the
    Court's application of the "original, more lenient version of Rule
23  8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 122 S.Ct. 992,
    152 L.Ed.2d 1 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007)
24  (per curiam), with the seemingly "higher pleading standard" in <u>Dura
    Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 125 S.Ct. 1627, 161
25  L.Ed.2d 577 (2005), <u>Twombly</u> and <u>Iqbal</u>.   <u>See also</u> <u>Cook v. Brewer</u>,
    637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts"
26  standard to a Section 1983 case).

1    Defendants' arguments alternate between those regarding the

2  court's ability to hear each of Plaintiff's claims and the

3  sufficiency of Plaintiff's substantive pleadings.  This court first

4  addresses the jurisdictional claims before turning to the substance

5  of Plaintiff's pleadings.

6  **A.   Exhaustion of Administrative Remedies**

7       **i. FEHA and Title VII Claims Based on Disability**

8    Defendants contend that Plaintiff failed to exhaust

9  administrative remedies relative to his FEHA and Title VII claims

10 insofar as they are premised on disability discrimination or

11 harassment.   They argue that Plaintiff only exhausted

12 administrative remedies for claims based on racial discrimination

13 and retaliation.  <u>See</u> Defs' Mot., ECF No. 9, Att. 1, at 10-11.[4]

14 Specifically, Defendants assert that Plaintiff's disability claims

15 should be dismissed because Plaintiff's "EEOC complaint . . . makes

16 no mention of a *disability*."  <u>Id.</u> at 10 (emphasis included).

17    To establish subject matter jurisdiction over a Title VII

18 claim, a plaintiff is required to exhaust his or her administrative

19 remedies.  <u>B.K.B. v. Maui Police Dep't.</u>, 276 F.3d 1091, 1099 (9th

20 Cir. 2002) (citing <u>EEOC v. Farmer Bros. Co.</u>, 31 F.3d 891, 899 (9th

21 Cir. 1994)).   Under Title VII, a plaintiff must exhaust his

22 administrative remedies by filing a timely charge with the Equal

23 Employment Opportunity Commission ("EEOC"), or the appropriate

24 state agency, thereby affording the agency an opportunity to

25 ───────────────

26        [4] Defendants' arguments here pertain to Plaintiff's First,
   Second, Fourth, and Seventh causes of action.

1  investigate the charge. Id. (citing 42 U.S.C. § 2000e-5(b)). That

2  panel asserted that, "the administrative charge requirement serves

3  the important purposes of giving the charged party notice of the

4  claim and 'narrow[ing] the issues for prompt adjudication and

5  decision.'" Id. (citing Park v. Howard Univ., 71 F.3d 904, 907

6  (D.C. Cir. 1995); Babrocky v. Jewel Food Co., 773 F.2d 857, 863

7  (7th Cir. 1985)).

8       Courts construe the language of EEOC charges "with utmost

9  liberality since they are made by those unschooled in the

10 technicalities of formal pleading." Id. at 1100. The crucial

11 element of a charge of discrimination is the factual statement

12 contained therein. Id. (quoting Sanchez v. Standard Brands, Inc.,

13 431 F.2d 455, 462 (5th Cir. 1970)). Allegations of discrimination

14 not included in the plaintiff's administrative charge "may not be

15 considered by a federal court unless the new claims are 'like or

16 reasonably related to the allegations contained in the EEOC

17 charge.'" Id. (citing, inter alia, Green v. Los Angeles County

18 Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989);

19 Anderson v. Reno, 190 F.3d 930, 935 (9th Cir. 1999)). In

20 determining whether a plaintiff has exhausted allegations that he

21 did not specify in his administrative charge, it is appropriate to

22 consider such factors as the alleged basis of the discrimination,

23 dates of discriminatory acts specified within the charge,

24 perpetrators of discrimination named in the charge, and any

25 locations at which discrimination is alleged to have occurred. Id.

26 In addition, the court should consider plaintiff's civil claims to

11

1  be reasonably related to allegations in the charge to the extent

2  that those claims are consistent with the plaintiff's original

3  theory of the case.  Id. (citing Farmer Bros., 31 F.3d at 899).

4      Put another way, the "jurisdictional scope of a Title VII

5  claimant's court action depends upon the scope of both the EEOC

6  charge and the EEOC investigation."  Farmer Bros., 31 F.3d at 899

7  (quoting Sosa v. Hirahoka, 920 F.2d 1451, 1456 (9th Cir. 1990)).

8  A district court has subject matter jurisdiction over a plaintiff's

9  allegations of discriminatory conduct "if that claim fell within

10 the scope of the EEOC's *actual* investigation or an EEOC

11 investigation which can *reasonably be expected* to grow out of the

12 charge of discrimination."  Id. (citing Sosa, 920 F.2d at 1456

13 (internal citations omitted) (emphasis included)).

14     In Plaintiff's EEOC charge, Plaintiff checked the boxes

15 indicating that his allegations of discrimination were based on

16 "race" and "retaliation," but he failed to check the box marked

17 "disability."[5]   In the written description of his allegations,

18 Plaintiff did not mention his stutter or assert that he is

19 otherwise disabled.   Plaintiff concluded that he has "been

20 discriminated against due to [his] race (black)" and that he has

21 "been retaliated against for engaging in protected activity."

22     It is clear that the factual basis underlying Plaintiff's EEOC

23

24     [5] The court takes judicial notice of Plaintiff's EEOC charge,
   dated April 30, 2011.  Defs' Req., ECF No. 9, Att. 2, at 11; see
25 City of Sausalito v. O'Neill, 386 F.3d 1186, 1223 (9th Cir. 2004)
   ("We may take judicial notice of a record of a state agency not
26 subject to reasonable dispute.").

claim is the same as the factual basis underlying his suit relative to race discrimination and retaliation.  Plaintiff's EEOC charge is largely based on Defendant Derk's alleged failure, from January 2010 to January 2011, to "allow[] [Plaintiff] to complete the duties of [his] position," as well as Defendant Derk's "rude and abusive manner during one-on-one meetings."  Plaintiff's EEOC charge is also based on his allegations that he was "given an assignment that Mr. Rogers knew was impossible, and was later blamed for not completing it."

However, Plaintiff's failure to mention his disability in the EEOC charge would seem to preclude a finding that his claims of disability discrimination and harassment are "like or reasonably related to" the claims he asserted to the EEOC of racial discrimination and retaliation.  Cf. Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003) ("A decision that an EEOC complaint with no mention whatsoever of disability is 'like or reasonably related to' Leong's disability claim would reduce the exhaustion requirement to a formality."); Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001) ("Rodriguez's [DFEH] charge of discrimination against Mexican-Americans would not reasonably trigger an investigation into discrimination on the ground of disability.  The two claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other."); Lowe v. City of Monrovia, 775 F.2d 998, 1004 (9th Cir.), amended by, 784 F.2d 1407 (1986) (plaintiff who had alleged only race discrimination to EEOC

could not include a cause of action for sex discrimination in a federal suit); Shah v. Mt. Zion Hospital & Med. Ctr., 642 F.2d 268, 271-72 (9th Cir. 1981) (EEOC complaint based on sex and national origin discrimination did not encompass theories of race, color, or religious discrimination and plaintiff could not make such allegations in a federal suit).

Despite appearances, that question is less than inevitable. As previously noted, a district court has subject matter jurisdiction over a plaintiff's allegations of discriminatory conduct if that claim falls "within the scope of the EEOC's *actual* investigation." EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994) (emphasis included).

According to the EEOC regulations, however, the EEOC's investigation of a charge is not limited to the statutory violations asserted by the charging party. The EEOC regulations provide:

> Whenever the Commission receives a charge or obtains information relating to possible violations of one of the statutes which it administers and the charge or information reveals possible violations of one or more of the other statutes which it administers, the Commission will treat such charges or information in accordance with all such relevant statutes.

29 C.F.R. § 1626.22(b) (2013). The regulations further provide that:

> Whenever a charge is filed under one statute and it is subsequently believed that the alleged discrimination constitutes an unlawful employment practice under another statute administered and enforced by the Commission, the charge may be so

14

1          amended and timeliness determined from the date of
2          filing of the original charge.

3 29 C.F.R. § 1626.22(c) (2013); see also 29 C.F.R. § 1601.34 (2013)

4 ("These rules and regulations shall be liberally construed to

5 effectuate the purposes and provisions of title VII, the ADA, and

6 [the Genetic Information Nondiscrimination Act].").

7          Similarly, the EEOC Compliance Manual gives its investigators

8 both the latitude and the obligation to report and investigate

9 potential statutory violations beyond those specified by the

10 charging party in the charging document.    See, e.g., EQUAL EMP'T

11 OPPORTUNITY COMM., EEOC COMPLIANCE MANUAL §§ 22.3 ("The [Request for

12 Information] will implicitly identify the initial scope of the

13 investigation; however, the respondent should be informed that the

14 scope may be expanded or limited based on information received

15 during the investigation"), 22.3(a) ("If an ADEA/EPA violation is

16 found during a Title VII/ADA case, pursue it regardless of the

17 scope of the charge"), 22.20 ("If an investigation under any

18 statute discloses apparent violations . . . involving Title VII/ADA

19 bases or issues beyond those already being investigated, report

20 them by memo to the supervisor.  Consideration can then be given to

21 expanding the scope of investigation of an existing Title VII/ADA

22 charge (if any) and/or seeking a Commissioner charge to address the

23 new bases/issues. . . .  When, during an investigation under any

24 statute, apparent ADEA/EPA violations are noted involving issues

25 and/or jobs not originally included within the scope of

26 investigation, the investigator, with the supervisor's approval,

1  may expand the investigation to address the other potential
2  violations."), 25.7 (same).

3      Because the EEOC's "*actual* investigation" can encompass
4  potential statutory violations beyond those alleged in the EEOC
5  charge, a plaintiff may not necessarily be foreclosed from raising
6  a Title VII or ADA claim in federal court that he failed to raise
7  in his EEOC charge.  If, for example, a plaintiff could produce
8  evidence that the EEOC's actual investigation explored statutory
9  violations beyond those raised in the EEOC charge, it would not be
10 frivolous for that plaintiff to argue that he exhausted his
11 administrative remedies as to the statutory violations actually
12 investigated.  Plaintiff, however, has produced no such evidence.

13     In the absence of such evidence, the court finds that
14 Plaintiff failed to exhaust his administrative remedies as to his
15 claims of disability discrimination.  Plaintiff is granted leave to
16 amend in the event that he is able to produce evidence that the
17 actual EEOC investigation went beyond the scope of his charge of
18 racial discrimination and included disability.

19     Plaintiff argues that his EEOC complaint tolled the statute of
20 limitations for his later filing of a Government Tort Claim with
21 the Victim Compensation and Government Claims Board ("VCGCB"), in
22 which he first asserted that he was discriminated against based in
23 part on his disability.  Assuming that equitable tolling applies to
24 his Government Tort Claim, Plaintiff argues that the VCGCB received
25 timely notice of his disability discrimination claim and, thus,
26 Plaintiff's disability discrimination claims are properly

1 exhausted.  The court, however, is not persuaded that the notice

2 requirements for his later-alleged disability claims should have

3 been tolled by an EEOC charge alleging racial discrimination in the

4 first instance.

5     The court therefore finds that Plaintiff failed to exhaust the

6 administrative remedies for his FEHA and Title VII claims based on

7 disability discrimination or harassment.    The court GRANTS

8 Defendants' motion to dismiss Plaintiff's FEHA and Title VII claims

9 based on disability discrimination and harassment, WITH LEAVE TO

10 AMEND.

11     **ii. California Whistle Blower Protection Act**

12     As to Plaintiff's California Whistle Blower Protection Act

13 ("WPA") claim, Defendants argue that: (1) Plaintiff untimely filed

14 his complaint with the State Personnel Board ("SPB"); (2) the one-

15 year SPB filing requirement was not equitably tolled by his filing

16 of an EEOC complaint; and (3) Plaintiff has still failed to

17 properly present a complaint to the SPB and any such claims are now

18 time-barred.  Defs' Mot., ECF No. 9, Att. 1, at 12-14.[6]

19     California's Whistle Blower Protection Act ("WPA") was

20 designed to protect persons who disclose information about

21 "improper governmental activity." <u>Bjorndal v. Superior Court</u>, 211

22 Cal.App.4th 1100, 1107, 150 Cal.Rptr.3d 405 (Cal.App. 1 Dist. 2012)

23 (citing Cal. Gov. Code § 8547.2(c),(e)).  A state official who uses

24 his or her "authority or influence" to interfere with such

25 ―――――――――――――――――

26     [6] Defendants' arguments here relate to Plaintiff's Third Cause
of Action.

disclosures is subject to "an action for civil damages brought . . . by the offended party." <u>Id.</u> (citing Cal. Gov. Code § 8547.3(a),(c)).  As a prerequisite to filing a suit for damages under the WPA, a state employee is required to file a "written complaint with the State Personnel Board . . . . within 12 months of the most recent act of reprisal complained about." <u>Id.</u> (citing § 8547.8(a)).[7]

Plaintiff does not contest that his complaint to the SPB was untimely filed but argues, instead, that the SPB's one-year filing requirement should be equitably tolled by his filing of the EEOC charge.  Pl's Opp'n, ECF No. 14, at 12-13.  Plaintiff's argument is unavailing.

The party seeking to invoke equitable tolling to avoid a limitations bar bears the burden of proving the applicability of the doctrine.  <u>In re Marriage of Zimmerman</u>, 183 Cal.App.4th 900, 912 (Cal.App. 2 Dist. 2010); <u>see also</u> <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1275 (9th Cir. 1993) ("As with the limitations period itself, we borrow our rules for equitable tolling of the period from the forum state, California.").[8]

---

[7] Once the Personnel Board has issued its findings as to the complaint, the complainant is not required to take any further administrative action prior to filing suit, and the board's findings are not binding in a later judicial proceeding.  <u>Id.</u> at 1108 (citing <u>State Bd. of Chiropractic Examiners v. Superior Court</u>, 45 Cal.4th 963, 977-78, 89 Cal.Rptr.3d 576, 201 P.3d 457 (Cal. 2009)).

[8] <u>Cervantes</u> further provides that application of California's test for equitable tolling requires a fact-intensive analysis and is therefore more appropriately analyzed at the summary judgment or trial stages of litigation, rather than the pleading stage.  <u>See</u>

1    In <u>McDonald v. Antelope Valley Cmty. College Dist.</u>, 45 Cal.4th

2  88, 194 P.3d 1026, 84 Cal.Rptr.3d 734 (Cal. 2008), the California

3  Supreme Court described the doctrine of equitable tolling as

4  follows:

5         The equitable tolling of statutes of limitations is
          a judicially created, nonstatutory doctrine. . . .
6         It is designed to prevent unjust and technical
          forfeitures of the right to a trial on the merits
7         when the purpose of the statute of limitations--
          timely notice to the defendant of the plaintiff's
8         claims--has been satisfied. . . . Where
          applicable, the doctrine will suspend or extend a
9         statute of limitations as necessary to ensure
          fundamental practicality and fairness. . . .
10        Broadly speaking, the doctrine applies when an
          injured person has several legal remedies and,
11        reasonably and in good faith, pursues one. . . .
          Thus, it may apply where one action stands to
12        lessen the harm that is the subject of a potential
          second action; where administrative remedies must
13        be exhausted before a second action can proceed; or
          where a first action, embarked upon in good faith,
14        is found to be defective for some reason.

15 <u>McDonald</u>, 45 Cal.4th at 99-100 (internal quotation marks and

16 citations omitted).

17  _____

18 <u>Cervantes</u>, 5 F.3d at 1276. Nevertheless, a district court may
   grant a motion to dismiss, despite a claim of equitable tolling,
19 if it is clear from the face of the complaint and the judicially
   noticed documents that the plaintiff cannot prevail as a matter of
20 law on the equitable tolling issue. <u>See</u> <u>id.</u> (noting that courts
   properly uphold dismissals despite a claim of equitable tolling
21 where "some fact, evident from the face of the complaint, supported
   the conclusion that the plaintiff could not prevail, as a matter
22 of law, on the equitable tolling issue"); <u>see</u> <u>also</u> <u>United States</u>
   <u>v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2010) ("A court may . . .
23 consider certain material--documents attached to the complaint,
   documents incorporated by reference in the complaint, or matters
24 of judicial notice--without converting the motion to dismiss into
   a motion for summary judgment."). In this case, the court is
25 satisfied that the judicially noticed documents, coupled with
   Plaintiff's complaint, provide a sufficient basis for the court to
26 rule on the equitable tolling issues presented.

1    In order to prove the applicability of California's equitable

2  tolling doctrine, a party must establish three elements: timely

3  notice to the defendant, lack of prejudice to the defendant, and

4  reasonable and good faith conduct on the part of the plaintiff.

5  Id. at 102 (citing Addison v. State of California, 21 Cal.3d 313,

6  319, 146 Cal.Rptr. 224, 578 P.2d 941 (Cal. 1978)).   The second

7  prerequisite essentially translates to a requirement that the facts

8  of the two claims (here, the EEOC charge and Plaintiff's complaint

9  to the SPB) be identical or at least so similar that the

10  defendant's investigation of the first claim will put him in a

11  position to fairly defend against the second.   Id. at n.2.

12    Here, Plaintiff's WPA claim is based on his allegation that he

13  reported an employee's illegal timecard fraud to his supervisors;

14  Plaintiff's initial complaint to the SPB, dated March 8, 2013,

15  essentially asserts the same.   See Pl's FAC, ECF No. 8, at 11, ¶

16  53; Def's Req., ECF No. 9, Att. 2, at 18.[9]   However, Plaintiff's

17  complaint to the EEOC, dated April 30, 2011, made no reference to

18  an employee's illegal timecard fraud, Plaintiff's reporting of the

19  illegal timecard fraud to his supervisors, or any consequences

20  therefrom.   Defendants' investigation of the EEOC claim would not

21  have put them in a position to fairly defend against Plaintiff's

22  WPA claim.   Applying the doctrine of equitable tolling to preserve

23  Plaintiff's WPA claim would therefore cause prejudice to the

24

25    [9] The court takes judicial notice of Plaintiff's complaint to
     the SPB.   See City of Sausalito v. O'Neill, 386 F.3d 1186, 1223
26   (9th Cir. 2004) ("We may take judicial notice of a record of a
     state agency not subject to reasonable dispute.").

1 Defendants.

2     Because Plaintiff failed to exhaust the administrative
3 remedies for his WPA claim by filing a timely complaint with the
4 SPB, Defendants' motion to dismiss Plaintiff's WPA claim is
5 GRANTED.  Plaintiff's Third Cause of Action is DISMISSED, WITHOUT
6 LEAVE TO AMEND.

7     **iii.  Discrimination and Retaliation Pursuant to California**
8     **Labor Code §§ 98.6 and 1102.5**

9     Defendants argue that Plaintiff failed to properly exhaust the
10 administrative remedies for his claims brought under the California
11 Labor Code §§ 98.6 and 1102.5 because: (1) Plaintiff failed to file
12 a charge with the Labor Commissioner before bringing suit; and (2)
13 Plaintiff failed to timely file a tort claim with the Victim
14 Compensation and Government Claims Board ("VCGCB"), as required by
15 the Government Claims Act.  Defs' Mot., ECF No. 9, Att. 1, at 17–
16 18.[10]

17     As to Defendants' first argument, Plaintiff does not dispute
18 that he failed to file a charge with the Labor Commissioner, but
19 argues, instead, that he was not required to do so, prior to filing
20 civil claims under California Labor Code §§ 98.6 and 1102.5.  Pl's
21 Opp'n, ECF No. 14, at 15–19.

22     California Labor Code § 98.7 provides, in relevant part: "Any
23 person who believes that he or she has been discharged or otherwise
24 discriminated against in violation of any law under the

25 ──────────────

26     [10] Defendants' arguments here pertain to Plaintiff's Sixth
Cause of Action.

1  jurisdiction of the Labor Commissioner *may* file a complaint with

2  the division with six months after the occurrence of the

3  violation." Cal. Labor Code § 98.7(a) (2003) (emphasis added).

4  After setting forth the Labor Commissioner's process for

5  investigating and reviewing such complaints, the statute further

6  provides that "[t]he rights and remedies provided by this section

7  do not preclude an employee from pursuing any other rights and

8  remedies under any other law." Cal. Labor Code § 98.7(f) (2003).

9      In <u>Campbell v. Regents of Univ. of Cal.</u>, 35 Cal.4th 311, 106

10 P.3d 976, 25 Cal.Rptr.3d 320 (Cal. 2005), the California Supreme

11 Court reaffirmed that the exhaustion of administrative remedies is

12 "a jurisdictional prerequisite to resort to the courts" and that

13 California case law requires "a respect for internal grievance

14 procedures and the exhaustion requirement where the Legislature has

15 not specifically mandated its own administrative review process."

16 <u>Id.</u> at 321 (internal citations omitted). The court concluded that

17 the plaintiff, a former public university employee bringing suit

18 under California Government Code § 12653(c) and California Labor

19 Code § 1102.5, had been required to exhaust the internal

20 administrative remedies available to university employees prior to

21 filing a lawsuit. <u>Id.</u> at 328. In discussing California Labor Code

22 § 1102.5, however, the court did not find that the plaintiff had

23 been required to exhaust administrative remedies by filing a claim

24 with the Labor Commissioner pursuant to California Labor Code §

25 98.7.

26      Nonetheless, the weight of district court decisions

interpreting California case law has found that exhaustion to the Labor Commissioner is required under California Labor Code § 98.7, despite the statute's permissive language. See, e.g., Miller v. Sw. Airlines, Co., -- F.Supp.2d --, 2013 WL 556963, at *3, 2013 U.S. Dist. LEXIS 18835, at *6 (N.D.Cal. Feb. 12, 2013); Ferretti v. Pfizer, Inc., 855 F.Supp.2d 1017, 1024 (N.D. Cal. 2012) (district courts have "uniformly" held since Campbell that exhaustion to the Labor Commissioner is required under § 98.7; collecting cases); Papillon v. San Francisco Unified Sch. Dist., 2012 WL 4892429, at *6-7, 2012 U.S. Dist. LEXIS 147470, at *15-19 (N.D.Cal. Oct. 12, 2012); Casissa v. First Republic Bank, 2012 WL 3020193, at *8, 2012 U.S. Dist. LEXIS 103206, at *22-24 (N.D.Cal. July 24, 2012); Morrow v. City of Oakland, 2012 WL 2133755 at *21-22, 2012 U.S. Dist. LEXIS 81318, at *60-62 (N.D.Cal. June 12, 2012); Dolis v. Bleum USA, Inc., 2011 WL 4501979, at *2, 2011 U.S. Dist. LEXIS 110575, at *4-6 (N.D.Cal. Sept. 28, 2011); Carter v. Dep't of Corr.-Santa Clara Cnty., 2010 WL 2681905, at *10, 2010 U.S. Dist. LEXIS 67232, at *26-27 (N.D.Cal. July 6, 2010); Hall v. Apartment Inv. & Mgmt. Co., 2008 WL 5396361, at *4, 2008 U.S. Dist. LEXIS 105698, at *10 (N.D.Cal. Dec. 19, 2008) ("exhaustion of the administrative remedies prescribed in § 98.7 applies to §§ 1102.5 and 98.6"); Romaneck v. Deutsche Asset Mgmt., 2006 WL 2385237, at *6-7, 2006 U.S. Dist. LEXIS 59397, *21-22 (N.D.Cal. Aug. 17, 2006); Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1180 (E.D.Cal. 2005) (Wanger, J.) (finding that the plaintiff failed "to allege that he exhausted available administrative remedies, including bringing a complaint

23

1  before the Labor Commissioner, before bringing suit").

2      A number of courts, however, have found that a plaintiff is

3  not obligated to file a claim with the Labor Commissioner before

4  filing suit for Labor Code violations. See, e.g., Lloyd v. County

5  of Los Angeles, 172 Cal.App.4th 320, 331-32, 90 Cal.Rptr.3d 872

6  (Cal. App. 2 Dist. 2009) (finding that "case law has recognized

7  there is no requirement that a plaintiff proceed through the Labor

8  Code administrative procedure in order to pursue a statutory cause

9  of action" and further finding "no reason . . . to impose an

10 administrative exhaustion requirement on plaintiffs seeking to sue

11 for Labor Code violations"); Creighton v. City of Livingston, 2009

12 WL 3246825, at *12, 2009 U.S. Dist. LEXIS 93720, at *32 (E.D. Cal.

13 Oct. 7, 2009) (Wanger, J.) ("No California decision requires as a

14 prerequisite to suit for statutory violation of the Labor Code

15 exhaustion of administrative remedies before the Labor

16 Commissioner. . . . By its terms, Campbell only held that

17 exhaustion of internal administrative remedies is required; there

18 is no discussion in Campbell of exhaustion of administrative

19 remedies before the Labor Commission"); Turner v. City & County of

20 San Francisco, 892, F.Supp.2d 1188, 1200-03 (N.D. Cal. 2012)

21 (finding Lloyd and Creighton's reasoning persuasive); Paterson v.

22 Cal. Dep't of Gen. Servs., 2007 WL 756954, at *7, n.5, 2007 U.S.

23 Dist. LEXIS 25957, at *22, n.5 (E.D. Cal. March 8, 2007) (England,

24 J.) (disagreeing with Neveu "[t]o the extent Neveu interprets

25 Campbell as requiring that remedies before the Labor Commissioner

26 must necessarily be exhausted as a prerequisite to suit under §

1102.5").

This court agrees with this latter set of cases and reads the text of Cal. Labor Code § 98.7 and <u>Campbell</u> to stand for the proposition that, while Section 98.7 does not obviate any existing requirements that administrative remedies be exhausted before filing a suit, it also does not require a plaintiff to exhaust administrative remedies by filing a claim with the Labor Commissioner before suing based on Labor Code violations. I conclude that Plaintiff was therefore not required to file a charge with the Labor Commissioner before bringing suit on his §§ 98.6 and 1102.5 claims.

As to Defendants' argument that Plaintiff failed to timely file a tort claim with the Victim Compensation and Government Claims Board ("VCGCB"), as required by the Government Claims Act, Plaintiff argues that the statute of limitations for filing a Government Tort Claim should have been equitable tolled by his filing of the EEOC charge. Pl's Opp'n, ECF No. 14, at 19.

Here, Plaintiff's Sixth Cause of Action, brought pursuant to California Labor Code §§ 98.6 and 1102.5, is based on his allegations that Defendants engaged in unlawful discrimination against him, and then retaliated against him for his complaint to the Defendant EDD's internal EEO office. <u>See</u> Pl's FAC, ECF No. 8, at 15, ¶ 76. Plaintiff's Government Tort Claim, filed on January 7, 2013, alleges discrimination and harassment based on the same facts alleged in the present action, Def's Request for Judicial

////

1  Notice, ECF No. 9, Att. 2, at 7-9,[11] as does Plaintiff's charge to

2  the EEOC.

3      The court finds that Plaintiff provided timely notice to the

4  Defendants of his discrimination claims through his filing of the

5  EEOC charge.   The Defendants were not prejudiced by the later

6  filing of Plaintiff's Government Tort Claim because the facts of

7  the two claims (the EEOC charge and Plaintiff's later filed

8  Government Tort claim) were so similar that Defendants'

9  investigation of the EEOC charge would have put them in a position

10 to fairly defend against the Government Tort Claim.   That is,

11 Defendants will not suffer prejudice from the application of

12 equitable tolling to Plaintiff's claims under the Labor Code.

13 Plaintiff's timely filing of the EEOC charge and, upon its denial,

14 his filing of the GTC soon thereafter, indicates that Plaintiff

15 pursued his remedies reasonably and in good faith.

16     The six-month statute of limitations for filing a Government

17 Tort Claim with the VCGCB[12] was therefore tolled by Plaintiff's

18 filing of his EEOC charge; Plaintiff's filing of his Government

19 Tort Claim was timely.[13]

20 ──────────────

21     [11] The court takes judicial notice of Plaintiff's Government
   Tort Claim.  See Defs' Req., ECF No. 9, Att. 2, at 7-9; City of
22 Sausalito v. O'Neill, 386 F.3d 1186, 1223 (9th Cir. 2004) ("We may
   take judicial notice of a record of a state agency not subject to
23 reasonable dispute.").

24     [12] See Cal. Gov. Code § 911.2 (2005).

25     [13] Defendants suggest that this court should defer to the
   "VCGCB's own view that Plaintiff is time barred and that it has no
26 jurisdiction." Defs' Reply, ECF No. 17, at 8, n.2.  The court
   disagrees.  The application of the Government Claims Act's statute

1          **a. "Protected Disclosure" Pursuant to California Labor**

2              **Code Section 1102.5**

3          Defendants further argue that Plaintiff failed to sufficiently

4    allege that he made a protected disclosure as required by Labor

5    Code § 1102.5.  Defs' Mot., ECF No. 9, Att. 1, at 18-19.

6          Section 1102.5 prohibits retaliation by an employer against an

7    employee who reports what he or she believes to be a statutory

8    violation to a governmental agency.  Cal. Lab. Code § 1102.5(c)

9    (2011); <u>Casissa v. First Republic Bank</u>, 2010 WL 2836896, at *2,

10   2010 U.S. Dist. LEXIS 72438, at *6 (N.D. Cal. July 19, 2010)

11   (providing that, in enacting section 1102.5(c), the California

12   Legislature intended "to protect employees who refuse to act at the

13   direction of their employer or refuse to participate in activities

14   of an employer that would result in a violation of law.") (quoting

15   Act of Sept. 22, 2003, ch. 484, § 1, 2003 Cal. Legis. Serv. 484)).

16         To establish a prima facie case of retaliation under section

17   1102.5(c), a plaintiff must show: (1) that he engaged in protected

18   activity;  (2)  that  he  was  thereafter  subjected  to  adverse

19

20   of limitations is not a matter within the particular expertise of
     the VCGCB.  <u>See</u>, <u>e.g.</u>, <u>Bamidele v. I.N.S.</u>, 99 F.3d 557, 561 (3d
21   Cir. 1996) (finding an agency's application of its statute of
     limitations "a clearly legal issue that courts are better equipped
22   to handle") (citing <u>Dion v. Sec'y of Health and Human Serv.</u>, 823
     F.2d 669, 673 (1st Cir. 1987); <u>Lynch v. Lyng</u>, 872 F.2d 718, 724
23   (6th Cir. 1989) ("the amount of weight accorded an agency
     interpretation diminishes further when the interpretation does not
24   require special knowledge within the agency's field of technical
     expertise"); <u>In re Oliver M. Elam, Jr., Co., Inc.</u>, 771 F.2d 174,
25   181 (6th Cir. 1985) ("When interpretation of the statute does not
     require special knowledge within the agency's field of technical
26   expertise, reviewing courts sometimes accord little deference to
     the agency's construction")).

employment action by his employer; and (3) that there was a causal link between the protected activity and the adverse employment action.  <u>Morgan v. Regents of Univ. of Cal.</u>, 88 Cal.App.4th 52, 69, 105 Cal.Rptr.2d 652 (Cal. App. 1 Dist. 2000).

Pursuant to subdivision (e) of section 1102.5, "[a] report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency" subject to the statute's protections.  Cal. Lab. Code § 1102.5(e) (2004).   Section 1102.5 has been "consistently interpreted to protect a public employee who reports legal violations to his or her own employer rather than to a separate public agency, where the employer or supervisor is not the suspected wrongdoer."  <u>Mize-Kurzman v. Marin Community College Dist.</u>, 202 Cal.App.4th 832, 856, 136 Cal.Rptr.3d 259 (Cal.App. 1 Dist. 2012).

While bare, Plaintiff's factual allegations sufficiently indicate that he filed a complaint with his agency's EEO office (a protected activity) based on unlawful discrimination and harassment, his employment was thereafter terminated, and he was terminated due to his prior complaints.[14]   Plaintiff therefore properly alleges that he made a protected disclosure as required by Labor Code § 1102.5.

---

[14]  Plaintiff, in his opposition, also argues that his reporting of an employee's illegal timecard fraud constituted a protected disclosure under the Labor Code.  For the reasons previously discussed, equitable tolling based on the EEOC charge does not apply to claims based on this theory.

1    Defendants' motion to dismiss Plaintiff's Sixth Cause of
2    Action is DENIED.

3    **B.  California Private Attorneys General Act's ("PAGA")**
4       **Statute of Limitations**

5    Defendants argue that Plaintiff failed to timely file his
6    claim under California's Private Attorneys General Act ("PAGA").
7    Defs' Mot., ECF No. 19-20.[15]  Plaintiff again argues that the
8    statute of limitations for filing a PAGA claim was equitably tolled
9    by his filing of the EEOC charge.  Pl's Opp'n, ECF No. 14, at 21-
10   22.

11   As discussed in more detail above, Plaintiff's EEOC charge set
12   forth Plaintiff's allegations of discrimination, harassment, and
13   retaliation based on race, but did not set forth allegations
14   regarding Plaintiff's reporting of an employee's timecard fraud.
15   Similarly, the EEOC charge did not include allegations that
16   Plaintiff was denied his required meal and rest breaks.  For the
17   reasons explicated above, Defendants would be prejudiced by having
18   to defend against the timecard fraud and meal and rest breaks, when
19   Plaintiff did not assert those charges against Defendants in a
20   timely fashion.  Defendants are not prejudiced, however, in
21   defending against Plaintiff's racial discrimination, harassment,
22   and retaliation claims.

23   To the extent that Plaintiff's PAGA claims are premised on
24   racial discrimination, harassment, and retaliation, the court finds

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26   [15] Defendant's arguments here pertain to Plaintiff's Ninth
Cause of Action.

29

1  that equitable tolling applies to the one-year limitations period

2  under PAGA and Plaintiff's PAGA claims in this regard were timely

3  filed.  However, to the extent that Plaintiff's PAGA claims were

4  based on illegal timecard fraud and Defendants' denial of his meal

5  and rest breaks, equitable tolling cannot apply to preserve

6  Plaintiff's claims.

7       Defendants' motion to dismiss Plaintiff's Ninth Cause of

8  Action, brought pursuant to PAGA, is DENIED.

9  **C.  Racial Discrimination and Harassment**

10      Defendants argue that Plaintiff fails to sufficiently plead

11 facts setting forth claims of racial discrimination, racial

12 harassment, or failure to prevent or investigate racial harassment,

13 pursuant to FEHA and Title VII. Defs' Mot., ECF No. 9, Att. 1, at

14 11-12 (discrimination), 14-15 (harassment), 15-16 (failure to

15 prevent or investigate harassment).[16]

16      The same legal principles apply to claims under Title VII and

17 FEHA. See Metoyer v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007);

18 Jenkins v. MCI Telecomm. Corp., 973 F.Supp. 1133, n.5 (C.D. Cal.

19 1997) ("Because the statutory provisions of Title VII and the FEHA

20 possess identical objectives and public policy considerations,

21 California courts refer to federal decisions when interpreting

22 analogous provisions of the FEHA"); see also Guz v. Bechtel Nat'l,

23 Inc., 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000)

24 (because of similarity between state and federal employment

25 ───────────────

26      [16] Defendants' arguments here pertain to Plaintiff's First,
   Second, and Fourth Causes of Action.

1  discrimination laws, California courts look to pertinent federal

2  precedent when applying state statutes).

3      Title VII makes it "an unlawful employment practice for an

4  employer . . . to discriminate against any individual with respect

5  to his compensation, terms, conditions, or privileges of

6  employment, because of such individual's race, color, religion,

7  sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see also Cal.

8  Gov't Code § 12940(a) ("It is an unlawful employment practice . .

9  . [f]or an employer, because of the race . . . of any person . . .

10 to discriminate against the person in compensation or in terms,

11 conditions, or privileges of employment."). A plaintiff may show

12 violation of Title VII by proving disparate treatment or disparate

13 impact, or by proving the existence of a hostile work environment.

14 Sischo-Nownejah v. Merced Community College Dist., 934 F.2d 1104,

15 1109 (9th Cir. 1991), *superseded by statute on other grounds as*

16 *recognized in* Dominguez-Curry v. Nevada Transp. Dep't., 924 F.3d

17 1027, 1041 (9th Cir. 2005).

18     A plaintiff may establish a prima facie case of discrimination

19 by introducing evidence that "give[s] rise to an inference of

20 unlawful discrimination." Texas Dep't of Community Affairs v.

21 Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207

22 (1981); Sischo-Nownejah, 934 F.2d at 1109.

23     A plaintiff can establish a prima facie case of discrimination

24 under Title VII by showing: (1) that he belongs to a protected

25 class; (2) he was qualified for the position; (3) he was subject to

26 an adverse employment action; and (4) the action occurred in

31

1  circumstances suggesting discriminatory motive.   See, <u>McDonnell</u>
2  <u>Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 36
3  L.Ed.2d 668 (1973).

4      Plaintiff's allegations sufficiently establish that he is a
5  member of a protected class (black), he was treated in a disparate
6  manner (one-on-one meetings that occurred more often than with
7  other supervisors under Defendant Derks), his work environment was
8  hostile (characterized by yelling and verbal attacks), and he was
9  qualified for his position (he was hired as a supervisor in charge
10 of numerous employees).   The court finds these allegations
11 sufficient, for pleading purposes, to give rise to an inference of
12 unlawful discrimination.

13     Defendants' motion to dismiss Plaintiff's claims of racial
14 discrimination, racial harassment, or failure to prevent or
15 investigate racial harassment, pursuant to FEHA and Title VII, is
16 DENIED.

17     **D.   Title VII Claim Against Defendants Rogers and Derks,**

18          **Individually**

19     Defendants argue that Plaintiff's Fourth Cause of Action for
20 harassment in violation of Title VII, may not be asserted against
21 Defendants Rogers and Derks in their individual capacities.   Defs'
22 Mot., ECF No. 9, Att. 1, at 16.[17]   Plaintiff concedes that he cannot
23 maintain a Title VII claim against the individual Defendants.   Pl's
24 Opp'n, ECF No. 14, at 15.

25  ───────────────
26      [17] Defendants' arguments here relate to Plaintiff's Fourth
    Cause of Action.

1  Defendants' motion to dismiss Plaintiff's Title VII claims

2  against Defendants Rogers and Derks is GRANTED, WITHOUT LEAVE TO

3  AMEND.

4  **E.  Punitive Damages**

5  Defendants assert that Plaintiff's request for punitive

6  damages against Defendants, as part of his harassment claims

7  brought under FEHA and Title VII, should fail because public

8  entities are not liable for punitive damages.  Defs' Mot., ECF No.

9  9, Att. 1, at 20.

10  Punitive damages may be awarded in a private enforcement

11  action under the FEHA, but they are not available against public

12  entities.  See State Personnel Bd. v. Fair Employment & Housing

13  Comm., 39 Cal.3d 422, 434, 217 Cal.Rptr. 16 (Cal. 1985); Runyon v.

14  Superior Ct., 187 Cal.App.3d 878, 881, 232 Cal.Rptr. 101 (Cal. App.

15  4 Dist. 1986).

16  The court GRANTS Defendants' motion to dismiss Plaintiff's

17  request for punitive damages as against Defendant EDD, but DENIES

18  Defendants' motion to dismiss Plaintiff's request for punitive

19  damages against the individual public employee Defendants.

20  **IV.  CONCLUSION**

21  Accordingly, for the reasons provided herein, Defendants'

22  motion to dismiss is GRANTED, in part, and DENIED, in part, as

23  follows:

24  [1] Plaintiff's FEHA and Title VII claims based on

25  disability discrimination and harassment are DISMISSED, WITH

26  LEAVE TO AMEND.

[2] Plaintiff's Third Cause of Action, brought pursuant to the California Whistle Blower Protection Act, is DISMISSED, WITHOUT LEAVE TO AMEND.

[3] Defendants' motion to dismiss Plaintiff's Sixth Cause of Action, brought pursuant to California Labor Code §§ 98.6 and 1102.5, is DENIED.

[4] Defendants' motion to dismiss Plaintiff's Ninth Cause of Action, brought pursuant to PAGA, is DENIED.

[5] Defendants' motion to dismiss Plaintiff's claims of racial discrimination, racial harassment, or failure to prevent or investigate racial harassment, pursuant to FEHA and Title VII, is DENIED.

[6] Defendants' motion to dismiss Plaintiff's Title VII claims against Defendants Rogers and Derks is GRANTED, WITHOUT LEAVE TO AMEND.

[7] Defendants' motion to dismiss Plaintiff's request for punitive damages as against Defendant EDD is GRANTED, but Defendants' motion to dismiss Plaintiff's request for punitive damages against the individual public employee defendants is DENIED.

IT IS SO ORDERED.

DATED:   August 19, 2013.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT